IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH SCHORSCH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 3740 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY, an Illinois | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deborah Schorsch filed the instant action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA", 29 U.S.C. § 1132(a)(1)(b)), against defendant Reliance Standard Life Insurance Company, the administrator of a long-term disability income disability coverage plan ( "Plan") sponsored by plaintiff's former employer. Defendant filed the instant motion for summary judgment pursuant to Fed. R. Civ. P 56(b) for failure to exhaust administrative remedies. For the following reasons, defendant's motion is granted.

**FACTS**[1]

Plaintiff was a salaried employee at United Conveyor Corporation from 1990 to 1993. While employed by United Conveyor Corporation, plaintiff purchased long-term disability insurance coverage through the United Conveyor Corporation Group Disability Plan ("Plan"). Defendant provided the coverage and served as the plan administrator. In August 1992, plaintiff was involved in a serious car accident and sustained a spinal contusion, resulting in permanent

---

[1] Unless otherwise indicated, the following are uncontested facts from the parties' L.R. 56.1 statements.

and disabling injury. Defendant approved the plaintiff's claim for long-term disability benefits, and plaintiff became entitled to receive benefits under the Plan on January 29, 1993.

The Plan provides that, for the first sixty months for which a monthly benefit is payable, "total disability" means that an insured cannot perform the material duties of her regular occupation on a full-time basis. After a monthly benefit has been paid for sixty months, "total disability" means that an insured cannot perform the material duties of *any* occupation (meaning any occupation that the insured's education, training, or experience will reasonably allow).

Beginning on January 29, 1993, defendant paid plaintiff her long-term disability benefits, without interruption, until January 29, 1998, when plaintiff's first sixty months receiving benefits ended. At that time, defendant conducted an investigation of plaintiff's medical and physical condition, and determined that plaintiff satisfied the second definition of "totally disabled," and that she was therefore eligible to continue receiving benefits until January 27, 2018 (when plaintiff reaches the age of 65), or when she no longer met the provisions of the plan.

On May 19, 2006, at defendant's request, plaintiff underwent an independent medical examination ("IME") at Northwest Orthopedic Surgery, which found her capable of performing, on a full-time basis, in a medium-duty occupation. In a letter dated June 13, 2006 ("June 13 Letter"), defendant informed plaintiff that it was terminating plaintiff's benefits as of June 29, 2006, because the results of the IME, along with the other medical documentation in plaintiff's claim file, led defendant's vocational staff to conclude that plaintiff could perform a number of occupations on a full-time basis. The June 13 Letter explained that plaintiff had the right to request a review of defendant's decision within 60 days, and asked that the written request for

review "state the reasons why you feel the claims should not have been denied" and "[i]nclude any additional documentation" in support of the claim. The June 13 Letter further explained that plaintiff "is also entitled to review the pertinent documents upon which [defendant's] determination was predicated."

Within the 60-day period, in a letter dated August 3, 2006 ("August 3 Letter"), plaintiff notified defendant that she intended to ask defendant to review its decision to revoke her disability benefits, stating that "[w]e will ask that you review the revocation decision" sometime "before the end of August." The August 3 Letter asked defendant to "please consider this notice of an intent to ask for your reconsideration." Plaintiff did not send the promised request for review. On February 13, 2007, defendant sent plaintiff a letter stating that no letter of appeal had been received and defendant's decision to terminate plaintiff's benefits was therefore final. Almost three years after her benefits were terminated, plaintiff brought the instant lawsuit.

## DISCUSSION

### I. Legal Standard

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. A movant is entitled to summary judgment when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and "set forth

3

specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 322-23. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

## II. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment because plaintiff has failed to exhaust her administrative remedies. While ERISA does not specifically require that a plaintiff exhaust administrative remedies before bringing a lawsuit in federal court, the Seventh Circuit has typically required administrative exhaustion. E.g., Gallegos v. Mount Sinai Medical Center, 210 F.3d 803, 807 (7th Cir. 2000) ("[I]t has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion."); Ames v. American Nat. Can Co., 170 F.3d 751, 756 (7th Cir. 1999); Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996). Requiring administrative exhaustion advances ERISA's policy goals, such as "to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a non-adversarial dispute resolution process; and decrease the cost and time of claims settlement." Powell v. A.T. & T. Comms., Inc., 938 F.2d 823, 826 (7th Cir. 1991), citing Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989).

Because plaintiff did not file a timely request for review, she failed to exhaust her administrative remedies. Gallegos, 210 F.3d at 808 ("Failure to file a request for review within [a limitations period on an application for review] is one means by which a claimant may fail to exhaust her administrative remedies.") (citation omitted). Plaintiff's August 3 Letter unambiguously expressed an intention to appeal, but was not itself a request for review. See Swanson v. Hearst Corp., 586 F.3d 1016, 1018-19 (5th Cir. 2009) (notice to appeal sometime in the future is not an appeal). The August 3 Letter explicitly requests defendant to "consider this notice of an intent to ask for your reconsideration," states that plaintiff "will ask that you review the revocation decision," and informs defendant that plaintiff "should have a more detailed analysis presented to you for your consideration before the end of August." These statements clearly show an intent to appeal in the future, not an appeal itself. Because the August 3 Letter did not include factual or substantive arguments, nor did it point to any evidence, defendant had nothing to consider on appeal.

Plaintiff does not seriously contend that she timely filed a request for review. Instead, she provides a number of unconvincing arguments for why the court should not require administrative exhaustion in the instant case. Most of plaintiff's arguments revolve around a general claim that she was denied meaningful access to the claims procedures because defendant failed to provide her with information that would have allowed her a full and fair review, and that defendant is now estopped from benefitting from the exhaustion doctrine. Plaintiff makes three factual allegations in support of this position.

First, plaintiff contends that because defendant allegedly concealed material facts and made misrepresentations in its June 13 Letter, defendant is estopped from arguing that she did

5

not exhaust administrative remedies.  A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts.  Loyola Univ. v. Humana Ins. Co., 996 F.2d 895, 902 (7th Cir. 1993).  In the instant case, plaintiff offers no evidence to show that she reasonably relied on defendant's alleged misrepresentations.  Plaintiff argues that if the June 13 Letter had specified all of defendant's reasons for terminating her benefits, "she would have immediately contested that fact in the first letter requesting an appeal from the June 13 [Letter]," and if she had known that defendant conducted surveillance as part of its investigation, "she could have immediately contested the false conclusions stated in the surveillance report."  Plaintiff is essentially arguing that defendant offered adequate and persuasive reasons for denying her benefits, but if defendant had offered other, less persuasive reasons, plaintiff would have chosen to appeal in a timely manner.

Although this argument might identify a contested fact concerning whether defendant concealed certain details related to its decision to terminate plaintiff's benefits, it fails to establish the materiality of those details on plaintiff's reasonable reliance on the omissions.  Defendant's decision, clearly communicated to plaintiff in its June 13 Letter, was based on the results of the IME that found that plaintiff was "capable of performing, on a full time basis, a Medium duty classification according to the Department of Labor standards."  The June 13 Letter went on to identify particular jobs that defendant's vocational staff had determined

plaintiff could perform, and notified plaintiff that she could request a review of the decision by stating "the reasons why you feel the claim should not have been denied."

The omission of details, such as defendant's surveillance of plaintiff (indicating to defendant that plaintiff was running a babysitting business out of her home) is immaterial to the conclusion reached as a result of the IME. Plaintiff had more than sufficient notice that defendant had denied her claim to long term disability benefits because it concluded she could perform certain medium duty jobs, and could have sought review based on her position that her condition resulted in permanent inability to perform any occupation. Consequently, plaintiff has failed to establish two of the requirements for estoppel: materiality and reasonable reliance.

Second, plaintiff points to the fact that defendant failed to preserve her administrative record. She argues that defendant therefore impeded the full development and preservation of a complete administrative record, which is one of the purposes of the administrative exhaustion requirement. Gallegos, 210 F.3d 803. Plaintiff, however, cites to no authority for the principle that failure to preserve the administrative record relieves her of the requirement that she exhaust her administrative remedies, nor does she claim that defendant's failure to preserve her administrative record prevented plaintiff from an administrative appeal. Instead, she asserts that this action constitutes a breach of defendant's fiduciary duty which, even if true, has no bearing on the instant motion.

Third, plaintiff argues that defendant incorrectly advised plaintiff that she had 60 days to appeal, when the applicable Department of Labor regulations actually allowed 180 days to appeal. Plaintiff's position is that she actually had 180, not 60, days to appeal, because effective January 1, 2002, the Department of Labor amended its rules to extend the minimum deadline for

filing an appeal from 60 to 180 days. 29 C.F.R. § 2560.503-1(h)(4). Because plaintiff failed to appeal within 180 days,[2] the court need not decide this question.

Plaintiff further alleges that because defendant did not inform her of the proper procedure for filing a request for review, her August 3 Letter was sufficient as a matter of law to initiate administrative review. In support of this argument, plaintiff cites Powell for the proposition that "an attorney's letter can be sufficient to initiate administrative review if a reasonable procedure for filing claims has not been established." 938 F.2d at 826. Plaintiff does not, however, mention that in Powell, the Seventh Circuit explained that to constitute a request for review, "[t]he content of the letter must be reasonably calculated to alert the employer to the nature of the claim and request administrative review." Id. As discussed above, the August 3 Letter explicitly did not request administrative review; it merely stated plaintiff's intention to seek such review in the future. Plaintiff also fails to mention that in Powell, the court found that the district court did not abuse its discretion in finding that plaintiff's letter *did not* initiate administrative review. Id. at 827. Finally, the court pointed out that—as plaintiff in the instant case could have done, but did not do—"any uncertainty about the potential for commencing an administrative review regarding disability benefits could have been clarified by a quick note from [plaintiff's] attorney to [defendant]." Id. In the instant case, plaintiff made no effort after her August 3 Letter to file a request for review or to clarify its obligations.

---

[2] Indeed, plaintiff never sought administrative review. After her August 3 Letter stating her intention to seek such review in the future, the next time plaintiff sought to overturn defendant's decision to deny her benefits was when she filed a lawsuit in the Circuit Court of Cook County, Chancery Division, on May 22, 2009, almost two and a half years after the 180 days expired.

8

Moreover, defendant's June 13 Letter explained the proper procedures for filing a request for review and was not required to explain the administrative exhaustion requirement. See Wert v. Liberty Life Assur. Co. of Boston, 447 F.3d 1060, 1066 (8th Cir. 2006), citing Kinkead v. Sw. Bell Corp. Sickness and Accident Disability Benefit Plan, 111 F.3d 67 (8th Cir. 1997) (holding that a denial of benefits letter need not set forth or explain an exhaustion requirement but that instead, notice of the availability of review is sufficient). Defendant's letter made clear that review was available ("You may request a review of this denial"), provided an address to which the request for review should be sent, informed plaintiff that she needed to submit a written request for review within 60 days, and gave her specific details on what to include in the request (instructing her to "state the reasons why you feel the claim should not have been denied [and include] any additional documentation which you feel will support your claim"). These statements satisfy ERISA's notice requirement for review procedures. See Ames, 170 F.3d at 758.

Finally, plaintiff contends that she effectively exhausted her administrative remedies because defendant did not adequately provide plaintiff with a summary plan description, follow DOL regulations in denying plaintiff's benefits, or update and distribute amended summary plan descriptions to plaintiff. The Seventh Circuit has found that a defendant may be estopped from asserting an exhaustion defense if the plan documents misled participants about the effect of foregoing administrative review, Gallegos, 210 F.3d at 809-10, but only if the defendant, (1) makes misleading representations to the claimant, and (2) the claimant reasonably relied on those misrepresentations to her detriment. Id. at 811. In Gallegos, the summary plan description and denial letter conveyed, on a plain reading, that the "administrative review procedure is wholly

voluntary and does not affect the ability of a participant to pursue relief through the federal court system." Id. at 808. Despite this misleading content, the court found that the plaintiff could not establish the second element of the court's test because "she has not shown that but for [the] representations she would have filed an administrative appeal within the 60-day limitations period." Id. In the instant case, plaintiff similarly cannot show that she relied on plan documents to her detriment, particularly because, as plaintiff asserts, plaintiff had only a copy of the group insurance policy, not a copy of the summary plan description.

Because plaintiff has failed to exhaust administrative remedies, and these remedies are now time-barred, the court dismisses her lawsuit with prejudice.

## **CONCLUSION**

For the reasons discussed above, the court grants defendant's motion for summary judgment and dismisses plaintiff's lawsuit with prejudice.


**ENTER:** September 29, 2010

_____
   **Robert W. Gettleman**
   **United States District Judge**